OPINION OF THE COURT
Vincent R. Balletta, J.
By an order dated August 28, 1987, Justice Molloy set this stay of arbitration proceeding down for a hearing in Special Term, Part II, on the preliminary issue of whether the offending vehicle was insured. The matter came to be heard by me on October 23, 1987, and decision was reserved pending the receipt of the minutes and posttrial memoranda.
The essential facts are as follows. It is clear from the evidence that the additional respondent, Commercial Union Insurance Company, issued a business auto policy to a Miguel D. Guzman, the owner/operator of the offending vehicle, pursuant to the New York Automobile Insurance Plan, as an *367 "assigned risk”, with effective dates of December 31, 1985 to December 31, 1986. On November 12, 1986, a renewal premium notice was mailed to Mr. Guzman with respect to renewing the policy for 1987.
It further appears that on or about December 9, 1987, Commercial then sent a note of nonrenewal to Mr. Guzman with a termination date of December 31, 1986. However, Commercial failed to file a notice of termination, commonly known as an FH-4, with the Commissioner of Motor Vehicles.
There are two issues to be determined by the court. First, whether the November 12, 1986 renewal premium notice was in sufficiently proper form so as to support a cancellation for nonpayment; and, second, whether the failure to file the FH-4 nullifies Commercial’s cancellation notice.
With respect to the first question concerning the sufficiency of the bill, section 14 (B) (1) of the New York Automobile Insurance Plan provides in relevant part as follows:
"B. First and Second Renewal Policies — At least 45 days but not more than 60 days, prior to the inception date of the first and second renewal policies, the designated insurer shall notify the named insured that:
"1. a renewal policy and identification card will be issued provided the renewal premium stipulated by such insurer is received prior to the inception of such policy, by the insurer or by the producer of record”. (Emphasis supplied.)
This language is analogous to that used in section 14 (E) (2) (b) of the New York Automobile Insurance Plan which states that "All such billing [of the premium of the first year’s policy] shall include advices that the insured has the option of remitting his premium payment either through his producer or directly to the company”.
It has been stated that "[w]here the procedures to be followed in issuing a notice of cancellation are set forth in a statute or rule, strict adherence rather than substantial compliance with the requisite provisions is necessary to effectuate cancellation.” (Federal Ins. Co. v Rivera, 122 Misc 2d 506, 509 [Sup Ct, Nassau County 1984].)
In a case involving section 14 (E) (2), quoted above, Eveready Ins. Co. v Mitchell (133 AD2d 210 [2d Dept 1987]), the court noted (at 211): "Rules of the New York Automobile Insurance Plan § 18 (2) further provides that an insurer shall have the right to cancel a policy upon notice for nonpayment of the premium. However, this right is contingent upon the mailing *368 of a proper bill, since the premium does not otherwise become due and owing. The bill must therefore strictly comply with Rules of the New York Automobile Insurance Plan § 14 (E) (2) in order to effectuate the legislative purpose of permitting persons injured by motorists to recover for their injuries * * * Absent strict compliance with these provisions, the subsequent cancellation is ineffective and the insurer remains liable and obligated to defend claims under the policy”.
While the Eveready case (supra) is not directly on point, it does offer some guidance towards the resolution of the issue at hand. As noted above, New York Automobile Insurance Plan § 14 (B) (1) indicates that the billing notice must show that the renewal premium can be paid either to the insurer or to the producer of record.
In this case, the renewal notice sent by Commercial was received into evidence. Typewritten at the top of the form is the name of the insured, Mr. Guzman, and the name of the producer of record, a Jae Enterprises. However, the form does not show, or suggest in any way, that the renewal premium may be sent to the producer of record. Rather, only the following statement is highlighted:
"IMPORTANT PREMIUMS MUST BE RECEIVED IN COMPANY OFFICE AS REQUIRED BY PLAN.”
In the court’s opinion, this is insufficient notice to the insured that he may remit his premium to either the insurer or the producer of record. Accordingly, the renewal premium notice which preceded the termination of coverage was not in proper form.
With respect to the second issue, namely, the effect of the failure to timely file an FH-4, it should be noted at the outset that, contrary to the respondent Commercial’s argument, Vehicle and Traffic Law § 313 (2) (a) is clearly inapplicable to this case. Vehicle and Traffic Law § 321 (1) provides that "[t]his article shall not apply to any motor vehicle for the operation of which security is required to be furnished under section three hundred seventy of this chapter”. (Also see, Ruffin v State-Wide Ins. Co., 56 Misc 2d 179 [Sup Ct, Kings County 1968].)
Article 8 of the Vehicle and Traffic Law deals with indemnity bonds or insurance policies on vehicles transporting passengers "for hire”. It is undisputed that the vehicle involved in this case was one "for hire”. Vehicle and Traffic Law *369 § 370 (1) (b) provides in relevant part as follows: "A personal surety upon a bond filed pursuant to this section or a corporate surety or an insurance company evidence of whose bond or policy has been so filed, must file a notice in the office of the commissioner that upon the expiration of forty-five days from such filing such surety will cease to be liable upon such bond, or in the case of such insurance company, that upon the expiration of such time such policy will be cancelled.”
In the case of Nassau Ins. Co. v Samuels (80 AD2d 855 [2d Dept 1981]), the court held that an insurer’s cancellation of its insured’s policy was ineffective since it had failed to file the FH-4 certificate of termination. The court noted that: "The Namoto vehicle was one 'for hire’. Therefore the cancellation of its policy of insurance is governed by section 370 of the Vehicle and Traffic Law * * * The purpose of this statute was primarily to protect the passengers of the vehicle, not the owner”. (80 AD2d, at 856.)
It would appear, therefore, that Commercial’s failure to file an FH-4 is also fatal to its attempted cancellation or termination of Mr. Guzman’s policy.
Accordingly, for all of the foregoing reasons, it is the court’s determination that Commercial’s cancellation of Mr. Guzman’s policy was a nullity, and that the insurance issued by Commercial to Mr. Guzman was still in full force and effect on January 28, 1987, the date of the accident.
The petitioner’s application for a stay of arbitration is hereby granted.